UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT J. ALLOR,

        Plaintiff,                    Civil Action No. 15-14377
                                         Honorable Sean F. Cox
        v.                    Magistrate Judge Elizabeth A. Stafford

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

        Defendant.
_____/

**REPORT AND RECOMMENDATION ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT [R. 11, 12]**

      Plaintiff Robert Allor appeals a final decision of defendant

Commissioner of Social Security ("Commissioner") denying his applications

for disability insurance benefits ("DIB") and supplemental security income

benefits ("SSI") under the Social Security Act (the "Act"). Both parties have

filed summary judgment motions, referred to this Court for a Report and

Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). After review of the

record and oral argument on November 15, 2016, the Court finds that the

administrative law judge's ("ALJ") decision is not supported by substantial

evidence, and thus **RECOMMENDS** that:

- the Commissioner's motion [R. 12] be **DENIED**;

- Allor's motion [R. 11] be **GRANTED**; and

- the Commissioner's decision be **REMANDED** for further

  consideration, pursuant to sentence four of 42 U.S.C. § 405(g).

## I.   BACKGROUND

### A.   Allor's Background and Disability Applications

Born April 13, 1962, Allor was 50 years old when he submitted his

applications for disability benefits on March 2, 2013.  [R. 7-6, Tr. 153].  He

has an 11th grade education, and last worked as a truck driver.  [*Id.*, Tr.

157].  Allor alleges a disability onset date of February 5, 2013, claiming

disability due to bipolar disorder, double lumbar laminectomy, degenerative

disk disease, and impairments related to his right shoulder.  [*Id.*, Tr. 156; R.

7-2, Tr. 16, 37-38].

After the Commissioner denied both disability applications initially,

Allor requested a hearing, which took place on June 11, 2014, and included

the testimony of Allor and a vocational expert ("VE").  [R. 7-2, Tr. 30-49].  In

a June 27, 2014, written decision, the ALJ found Allor to be not disabled.

[*Id.*, Tr. 14-25].  The Appeals Council denied review, making the ALJ's

decision the final decision of the Commissioner, and Allor timely filed for

judicial review.  [*Id.*, Tr. 2-4; R. 1].

**B.     The ALJ's Application of the Disability Framework Analysis**

DIB and SSI are available for those who have a "disability."  *See*

*Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  A "disability" is the

"inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months."  42 U.S.C. §§

423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by

analyzing five sequential steps.  First, if the applicant is "doing substantial

gainful activity," he or she will be found not disabled.  20 C.F.R. §§

404.1520(a)(4), 416.920(a)(4).[1]  Second, if the claimant has not had a

severe impairment or a combination of such impairments[2] for a continuous

period of at least 12 months, no disability will be found.  *Id.*  Third, if the

claimant's severe impairments meet or equal the criteria of an impairment

set forth in the Commissioner's Listing of Impairments, the claimant will be

found disabled.  *Id.*  If the fourth step is reached, the Commissioner

---

[1] Sections 1520(a)(4) and 920(a)(4), which pertain to DIB and SSI
respectively, list the same five-step analysis.

[2] A severe impairment is one that "significantly limits [the claimant's]
physical or mental ability to do basic work activities."  § 1520(c); § 920(c).

considers its assessment of the claimant's residual functional capacity, and will find the claimant not disabled if he or she can still do past relevant work.  *Id.*  At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work.  *Id.*  The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached.  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Allor was not disabled.  At the first step, he found that Allor had not engaged in substantial gainful activity since his alleged onset date.  [R. 7-2, Tr. 16].  At the second step, he found that Allor had the severe impairments of "acute coronary syndrome; degenerative disc disease of the lumbar spine status post surgery; hypertension; anemia; thrombocytopenia; and bipolar disorder."  [*Id.*].  Next, the ALJ concluded that none of his impairments, either alone or in combination, met or medically equaled the severity of a listed impairment.  [*Id.*, Tr. 17].

Between the third and fourth steps, the ALJ found that Allor had the RFC:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he can occasionally lift up to twenty

4

pounds and frequently lift up to ten pounds.  He is able to stand or walk four hours out of an eight-hour workday and sit of [*sic*] six hours out of an eight-hour workday.  For every thirty minutes of sitting, standing, or walking, he must be able to change position for five minutes before resuming the prior position.  He is unable to kneel, crawl, or climb ladders, ropes, or scaffolds.  He can occasionally balance, stoop, crouch, and climb ramps and stairs.  He can occasionally operate foot controls.  He can occasionally reach overheard with the right arm.  Whenever he is required to stand or walk, he must be able to use a cane in his right, dominant hand.  He is unable to perform commercial driving.  He is unable to work around unprotected heights or uncovered or unguarded moving machinery.  He is limited to simple instructions.  He is unable to interact with the general public and can occasionally interact with supervisors and coworkers.

[R. 7-2, Tr. 19].  At step four, the ALJ found that Allor could not perform past relevant work.  [*Id.*, Tr. 23].  With the assistance of VE testimony, [*id.*, Tr. 24-25], the ALJ determined at step five that based on Allor's age, education, work experience and RFC, he could perform the positions of assembler, sorter and inspector-packager, for which significant jobs existed in the economy.  [*Id.*, Tr. 24].

## II.   ANALYSIS

### A.

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards.  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).  Substantial evidence is

"more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted).  Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence.  *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

The Commissioner must also adhere to its own procedures, but failure to do so constitutes only harmless error unless the claimant has been prejudiced or deprived of substantial rights.  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009).  An ALJ's failure to use an "adjudicatory tool" that does not change the outcome of the decision is harmless.  *Id.* at 655-56.

Among other arguments, Allor complains that the ALJ's credibility determination and finding that he had the capability for the good deal of walking or standing required for light work are not supported by substantial evidence.  The Commissioner notes that the ALJ's assessment of Allor's RFC included only a limited range of light work, and that the VE's testimony that Allor could perform light work was in response to a hypothetical that incorporated those limitations.  Additionally, the Commissioner argues that

6

Allor's medical records and activities of daily living support the ALJ's assessment of Allor's credibility and RFC.  The Court finds that the ALJ improperly relied upon only fragments of the record and his own lay evaluation of medical evidence in order to find that Allor's allegations of functional limitations were not credible, and to find that Allor was capable of a limited range of light work.  The ALJ's also erred by determining that Allor's condition did not equal a disability listing without the support of an expert medical opinion.  For these reasons, the ALJ's decision is not supported by substantial evidence and this case should be remanded for further consideration.

**B.**

The record includes significant objective evidence regarding Allor's spinal diseases.  This evidence includes a March 11, 2013, imaging study that found "advanced degenerative disk changes at L5-S1."  [R. 7-7, Tr. 322].  A March 26, 2013, CT scan revealed moderate degenerative disc disease with vacuum phenomenon at L5-S1, degenerative changes that were "most pronounced at L3-L4 whether there appears to be spinal canal and bilateral neural foraminal narrowing."[3]  [*Id.*, Tr. 231-32].  Between

---

[3] "Neuroforaminal narrowing refers to a reduction of the size of the opening in the spinal column through which the spinal nerve exits. As this opening narrows, the nerve becomes compressed, which in turn can lead to pain

7

March 2013 and May 2014, musculoskeletal examinations from treating physician Mark W. Kemp, D.O. and physician assistant Sheri L. Fox revealed muscle tightness, tenderness and spasms, decreased spinal ranges of motion with respect to both flexion and extension, weak muscle tone and a mildly antalgic gait.  [*Id.,* Tr. 403, 406-07, 436-38, 446, 458; R. 7-8, Tr. 474-79, 508, 521, 531].

Dr. Kemp referred Allor to Marvin Bleiberg, M.D., of Michigan Spine & Pain, for evaluation. In May 2013, Dr. Bleiberg found that Allor was showing "straightening of lumbar lordosis with palpable step up;"[4] had "50% limitation to flexion, extension, right side bending, left side bending, right rotation, left rotation"; suffered pain with flexion, extension, rotation (bilaterally), bending (bilaterally); experienced spinal, bilateral paraspinal and bilateral sacroiliac joint tenderness; had bilateral tenderness present with straight leg raising; suffered involuntary muscle spasms, bilaterally;

_____

that radiates along the path of the nerve." http://www.spine-health.com/glossary/neuroforaminal-narrowing (viewed on November 21, 2016).

[4] "When the lordosis straightens, the condition may be described as a straight spine, a straight neck or a military neck, depending on the location of the syndrome. A loss of spinal curvature is often implicated as a source of pain when typically it is a direct result of an already present back muscle spasm condition due to some other causation."  http://www.cure-back-pain.org/lordotic-straightening.html (viewed on November 21, 2016).

and showed a positive Patrick's sign (bilaterally).[5]  [R. 7-8, Tr. 474-79].  Dr.

Bleiberg diagnosed Allor with degenerative disc disease, facet arthropathy

syndrome,[6] low back pain and chronic pain syndrome, lumbosacral

radiculitis,[7] and imbalance.  [*Id.*, Tr. 477].

    After this May 2013 examination, Dr. Bleiberg opined that Allor could

perform no work until further notice.  [R. 7-7, Tr. 347].  Similarly, in

December 2013, PA Fox adopted a functional evaluation that was prepared

by a physical therapist indicating that Allor "does not meet any physical

demand work levels." [*Id.,* Tr. 473].  The form upon which this assessment

was indicated allowed for a range of choices, including the capacity to

perform light and sedentary work, but the physical therapist selected the

---

[5]"The (Patrick's) FABER Test stands for Flexion, Abduction and External
Rotation. These three motions combined result in a clinical pain
provocation test to find pathologies at the hip, lumbar and sacroiliac
region." http://www.physio-pedia.com/FABER_Test (viewed on November
21, 2016).

[6] "The facet joints connect the vertebral bodies to one another, and like the
hip and the knee, they can also become arthritic and painful, and can be a
source of back pain….  Most people with facet arthropathy will complain of
lower back pain that becomes worse when twisting, standing, or bending
backward."  http://www.back.com/back-pain/conditions/back-arthritis/
(viewed on November 21, 2016).

[7]"[R]adiculitis, is pain that 'radiates' along the sensory distribution of a
nerve due to inflammation or other irritation of the nerve root at its
connection to the spinal column."
http://www.spinediagnostic.com/InDepthInformation/TreatingLumbarRadicu
larPainAtItsSource/tabid/4678/Default.aspx (viewed on November 21,
2016).

choice indicating that Allor was incapable of any work.  [*Id.*].  This

evaluation was based in part on objective information, including Allor

performing below functional levels on a musculoskeletal screen, and

observations that he "demonstrated muscle tremor following walking or

standing activities," "showed facial grimacing and body repositioning during

sitting and standing activities," had an "unstable gait and decreased

functional range of motion."  [*Id.*, Tr. 471-73].

The ALJ rejected Dr. Bleiberg's opinion that Allor could perform no

work, which was within his right, because whether Allor is totally disabled is

an issue reserved for the Commissioner. *See Brock v. Comm'r of Soc.*

*Sec.*, 368 Fed. Appx. 622, 625 (6th Cir. 2010). Additionally, neither

physician assistants nor physical therapists are medical sources to which

the ALJ owed deference.  *Bis v. Colvin*, No. 14-CV-11530, 2015 WL

1849400, at *4 (E.D. Mich. Apr. 22, 2015) (citing 20 C.F.R. §

404.1513(a)(1–4); (d)(1)).  So the ALJ was not required to refer to the

opinions of PA Fox or the physical therapist.  But having given little weight

to these opinions, the ALJ was left with no medical opinions pertaining to

Allor's functional capacity.  And the ALJ found that Allor was capable of

limited light work despite the testimony and reports of Allor and his fiancée

indicating that he cannot sit for more than 10 to 15 minutes without having

to stand up; that he can only stand for about 10 minutes; that he cannot walk more than 20 yards without having to rest and that he does not walk alone because he might fall; that his daily activities are mostly napping, watching television, using the computer, and working on puzzles, but only for a short time; that his only household chores are rinsing dishes and loading the dishwasher, which takes about 5 minutes; and that he cannot drive because of his back pain.  [R. 7-2, Tr. 36-44; R. 7-6, Tr. 166-72, 191-97].  Allor additionally testified that he is dependent on a cane and must use it for both walking and balancing.  [R. 7-2, Tr. 38-39].  During the hearing, Allor told the ALJ that he felt "terrible" and had to stand up.  [*Id.*, Tr. 43-44].

## C.

Credibility determinations of witnesses are within the province of the ALJ and should not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). At the same time, "such determinations must find support in the record." *Rogers*, 486 F.3d at 241. Here, the ALJ's credibility determination does not find support in the full record.

The ALJ found that Allor's and his fiancée's testimony regarding the degree of his impairment not credible, based in large part on the "medical

11

evidence." [R. 7-2, Tr. 21, 23].  He said that their allegations were "simply

not consistent with the preponderance of opinions and observations by

medical doctors in this case."  [*Id.*, Tr. 23].  But that statement is plainly

inaccurate; the only opinions in the record regarding the functional

limitations pertaining to Allor's back concluded that he could not work.  And

what the ALJ characterized as the preponderance of the record was

actually mere fragments of it.

The ALJ cited evidence in the record that Allor's gait was either

normal or mildly antalgic, and to Dr. Bleiberg's findings that Allor had intact

sensation and a negative straight leg raising test.  [R. 7-2, Tr. 21, citing R.

7-7, Tr. 247-334, 256, 259, R. 7-8, Tr. 476-77, 521, 531].  The ALJ pointed

to a report from a doctor who examined Allor in September 2013 for

confusion (and not his back pain), who noted no muscle atrophy or

weakness, a normal gait, present and symmetrical reflexes and no sensory

deficits.  [R. 7-2, Tr. 20, citing R. 7-7, Tr. 449].  The ALJ interpreted a

mental health clinical assessment stating that Allor was a good musician

and a car mechanic as undermining his claim of that he has significant

difficultly with his hands and back (despite the fact that the assessment did

not detail how often or recently Allor engaged in these activities).  [R. 7-2,

citing R. 7-7, Tr. 354].  Finally, the ALJ cited to a May 2013 note from Fox

that Allor's pain was 2 out of 10 when taking MS Contin (morphine) 2 to 3 times a day, and that Allor told PA Fox in November 2013 that the MS Contin was wearing off only after 10 hours.  [R. 7-7, Tr. 436, 457].

But there was significant objective evidence in the record that supported Allor's claims of functional impairment, including the March 2013 imaging studies revealing "advanced" or "moderate" degenerative disk changes, and "most pronounced" degenerative changes at L3-L4, including bilateral neural forminal narrowing (implicating possible nerve compression).  [R. 7-7, Tr. 231-232, 322].  The record is replete with clinical examine findings, including decreased ranges of motion and muscle spasms. [*Id.*, Tr. 403, 406-07, 436-38, 446, 458; R. 7-8, Tr. 474-79, 508, 521, 531].  The physical therapist documented having observed Allor's struggle during standing, walking and sitting activities.  [R. 7-7, Tr. 471-73].  Dr. Bleiberg's reports included a host of relevant clinical findings that he set forth in bold letters, including straightening of lumbar lordosis, significant limitations in ranges of motion, tenderness, involuntary muscle spasms, and a positive Patrick's sign, and Dr. Bleiberg's multiple diagnoses included radiculitis and facet arthropathy syndrome, thus implicating the involvement of both Allor's spinal nerves and joints.  [R. 7-8, Tr. 474-79].  Yet the ALJ cited to a couple of Dr. Bleiberg's negative findings as disproving Allor's

13

claims.  In other words, instead of taking in to account all of the objective medical evidence, the ALJ cited to mere fragments of the record to determine that Allor's claims of functional limitation were not credible. This was error.

The significant deference accorded to the Commissioner's decision is conditioned on the ALJ's adherence to governing standards.  "Chief among these is the rule that the ALJ must consider all evidence in the record when making a determination, including all objective medical evidence, medical signs, and laboratory findings."  *Gentry*, 741 F.3d at 723.  *See also Rogers*, 486 F.3d at 249.  In other words, substantial evidence cannot be based upon fragments of the evidence, and "must take into account whatever in the record fairly detracts from its weight."  *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal quotation marks and citation omitted).

The ALJ's error here was compounded by the fact that he was acting well outside of his expertise when evaluating the raw medical data.

## D.

"ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."  *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (citation and internal quotation marks omitted).  This caution applies when ALJs are establishing RFCs.  "[C]ourts

14

have stressed the importance of medical opinions to support a claimant's

RFC, and cautioned ALJs against relying on their own expertise in drawing

RFC conclusions from raw medical data." *Allen v. Comm'r of Soc. Sec.*,

No. 12-15097, 2013 WL 5676254, at *15 (E.D. Mich. Sept. 13, 2013)

*adopted by* 2013 WL 5676251 (E.D. Mich. Oct. 18, 2013) (collecting

cases).  In *Allen*, the ALJ did not adopt the only medical opinion in the

record, and no consulting physician had rendered an opinion.  "Thus, we

are left with the circumstance of the ALJ interpreting raw medical data to

arrive at a residual functional capacity determination, without the benefit of

an expert medical opinion."  *Id.*

It is true that "[a] functional capacity opinion from a medical source

may not be necessary in every case." *Deskin v. Comm'r of Soc. Sec.*, 605

F. Supp. 2d 908, 912 (N.D. Ohio 2008).  But "[w]hen a claimant has

sufficiently placed his or her functional inability at issue, 'the ALJ must

measure the claimant's capabilities, and to make that measurement, an

expert's RFC evaluation is ordinarily essential....'"  *Id.* (quoting *Manso–*

*Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 17 (1st Cir.1996).

If the claimant's functional inability has been sufficiently placed in issue, the

general rule applies: "An ALJ is not qualified to assess a claimant's RFC on

the basis of bare medical findings, and as a result an ALJ's determination

of RFC without a medical advisor's assessment is not supported by substantial evidence." *Id.* (citation and quotation marks omitted).   *See also Wyatt v. Comm'r of Soc. Sec.*, No. 12-11406, 2013 WL 4483074, at \*16 (E.D. Mich. Aug. 19, 2013) ("ALJ RFC determinations must be supported by medical opinions.").

In *Allen*, the raw medical data at issue included "well-documented degenerative knee impairments and positive signs for carpal tunnel syndrome." *Allen*, 2013 WL 5676254 at \*16. In *Deskin*, the plaintiff suffered from multiple impairments of her back, had an extensive treating relationship with her doctors and her treatment was well documented in the record.  *Deskin*, 605 F.Supp.2d at 910.  Here, the raw medical data included well-documented degenerative changes in Allor's spine, and there were well-document treatment records from his medical providers.  He sufficiently placed his functional inability at issue.

But after rejecting the opinions regarding Allor's functional capability, the ALJ failed to secure a medical opinion regarding Allor's RFC, and instead interpreted raw medical evidence that was far outside of his expertise.  In doing so, the ALJ determined that Allor was capable of limited light work that required up to four hours of walking and standing, and six hours of sitting – an RFC that is diametrically contrary to the opinions of Dr.

16

Bleiberg, PA Fox and the physical therapists that Allor had no functional

capacity for working.  While the ALJ had no duty to defer to those opinions,

they further undermine the Commissioner's argument that the ALJ's

opinion is supported by substantial evidence; the only evidence upon which

the ALJ relied to interpret the raw medical data and assess Allor's RFC was

his own lay opinion.  This was reversible error.  *Allen,* 2013 WL 5676254, at

*15; *Deskin,* 605 F. Supp. 2d at 908.

### E.

Relatedly, the ALJ erred by analyzing Allor's ability to medically equal

Listing 1.04 without the benefit of a medical opinion. [R. 7-2, Tr. 17].  Listing

1.04 requires evidence of a spinal disorder "resulting in compromise of a

nerve root" and, applicable to this case, "[e]vidence of nerve root

compression characterized by neuro-anatomic distribution of pain, limitation

of motion of the spine, motor loss (atrophy with associated muscle

weakness or muscle weakness) accompanied by sensory or reflex loss

and, if there is involvement of the lower back, positive straight-leg raising

test." Allor's benefits were denied initially based on the opinion of a non-

physical single decisionmaker, Dustin Gillispie.[8] [R. 7-3, Tr. 57].  The ALJ

---

[8] Mark Garner, Ph. D., offered a mental RFC and did not opine as to Allor's
physical impairments or exertional limitations.  [R. 7-3, Tr. 54].

17

did not rely on that opinion at step three, but instead analyzed Allor's ability to meet or medically equal Listing 1.04 himself, concluding that the record was devoid of any evidence of the factors necessary to satisfy the listing. [R. 7-2, Tr. 17].

SSR 96–6p "requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight." SSR 96–6p, 1996 WL 374180, at *3 (July 2, 1996). Most courts in this district agree that a medical opinion on the issue of equivalency is necessary at the administrative hearing stage. *See, e.g., Fowler v. Comm'r of Soc. Sec.*, No. 12–12637, 2013 WL 5372883, at *4 (E.D. Mich. Sept. 25, 2013) ("[O]nce a hearing is requested, SSR 96–6p is applicable, and requires a medical opinion on the issue of equivalence."). Although this type of error may be considered harmless error when the evidence demonstrates that the claimant could not meet the elements of a given listing, (*see e.g. Bukowski v. Comm'r of Soc. Sec.*, No. 13-CV-12040, 2014 WL 4823861 (E.D. Mich. Sept. 26, 2014)), such is not the case here. "[C]ourts generally should exercise caution in conducting harmless error review" of a step three finding because harmlessness "may be difficult, or

even impossible, to assess . . ." *Rabbers v. CSS,* 582 F.3d 647, 657–658 (6th Cir. 2009).

This caution applies here, because neither the ALJ nor this Court possesses the medical expertise to interpret the significant medical evidence in the record to determine if Allor's impairments equals Listing 1.04.  *Harris v. Comm'r of Soc. Sec.*, No. 12-10387, 2013 WL 1192301, at *8 (E.D. Mich. Mar. 22, 2013) (court lacked medical expertise to determine whether impairments met equivalency requirement).  Allor's spinals diseases are well documented; the possibility of compromise of the nerve root is supported by the 2013 CT scan revealed bilateral neural foraminal narrowing and Dr. Bleiberg's diagnosis of radiculitis; and Allor has on multiple occasions been found to have limited ranges of motion in the spine. This record fails to demonstrate that Allor's condition could not medically equal Listing 1.04; it suggests the opposite. This matter should thus be remanded so that the ALJ "can properly make an equivalency determination after consulting with a Commissioner-appointed medical expert."  *Id.*

Allor did not challenge the ALJ's listing analysis, "and generally arguments not raised are abandoned." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011). "However, this rule is prudential and

not jurisdictional," *id.*, and the court in *Reynolds* reversed an ALJ's decision in the interest of justice because the ALJ had failed to analyze Listing 1.04. The *Reynolds* court relied in part on the gravity of the error; "the regulations indicate that if a person is found to meet a Listed Impairment, they are disabled within the meaning of the regulations and are entitled to benefits; no more analysis is necessary."  *Reynolds*, 424 F. App'x at 416 (citing 20 C.F.R. 1520(a)(4)(iii).  In the interest of justice, this matter should be remanded in with an order that the ALJ secure a medical opinion for his listing analysis.

## III.   CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that the Commissioner's motion [R. 12] be **DENIED**; that Allor's motion [R. 11] be **GRANTED**; and that the Commissioner's decision be **REMANDED** for further proceedings consistent with this report and recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: November 28, 2016

## <u>NOTICE TO THE PARTIES REGARDING OBJECTIONS</u>

Either party to this action may object to and seek review of this

Report and Recommendation, but must act within fourteen days of service

of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ.

P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any

further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v.*

*Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*,

638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but

fail to raise others with specificity will not preserve all objections that party

might have to this Report and Recommendation.  *Willis v. Secretary of*

*HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection

must be served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2,"

etc., and **must specify** precisely the provision of this Report and

Recommendation to which it pertains.  Not later than fourteen days after

service of objections, **the non-objecting party must file a response** to

the objections, specifically addressing each issue raised in the objections in

the same order and labeled as "Response to Objection #1," "Response to

Objection #2," etc.  The response must be **concise and proportionate in**

21

**length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 28, 2016.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager

22